```
               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA

               CASE NO. 07-61895-CIV-ZLOCH
```

SONEET R. KAPILA, as
Trustee for Ernesto Jan-
Carlo Garruto, and MARY NELL
BETANCOURT,

      Plaintiffs,

                                  **O R D E R**

vs.

STEPHEN JENKINS, CHARLES
YOUNG, and BARBARA DYER,

      Defendants.

_____/

THIS MATTER is before the Court upon Defendants' Motion For Summary Judgment (DE 34). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

Ernesto Jan-Carlo Garruto and Mary Nell Betancourt (hereinafter "Plaintiffs") filed this § 1983 against Defendants, Broward Sheriff's Office police officers, claiming violations of their constitutional right to be free from unreasonable searches and seizures.[1] Specifically, Plaintiffs claim that Defendant Stephen Jenkins subjected them to an unreasonable seizure when he conducted a traffic stop on them that lasted longer than the suspicion giving rise to it and that Defendants Charles Young and

---

[1] By prior Order, Chapter 7 Bankruptcy Trustee Soneet R. Kapila was substituted as party-Plaintiff for Ernesto Jan-Carlo Garruto. For the sake of simplicity, the Court will refer to Garruto as party-Plaintiff in this Order.

Barbara Dyer subjected them to unreasonable searches in patting them down during the stop.  Defendants argue that their actions constitute a reasonable stop and frisk under Terry and, in the alternative, that they are entitled to qualified immunity for any constitutional violation.  Based on the record before it and the briefing by the Parties, the Court finds first that there was no articulable, reasonable suspicion for the frisk, second that the detention continued after any reasonable suspicion of criminal activity was removed, and third that these actions violated the clearly established rights of Plaintiffs.

## I. Background

On the evening of December 15, 2004, Plaintiff Ernesto Jan-Carlo Garruto was in the driver's seat of Plaintiff Mary Nell Betancourt's BMW sedan, license plate number LWW144.[2]  Betancourt was the passenger.  While on routine patrol, Defendant Jenkins saw the BMW and ran its license plate.  The tag came back registered to a stolen Ford F-350 Econoline truck.  Unfortunately for all involved, the Ford's registered tag was LWW114, but it was typed into the National and Florida Crime Information Centers' teletype systems as LWW144, Betancourt's tag.  At 12:18 a.m. on the morning

---

[2] Where the Parties disagree, these facts are taken from Plaintiffs' Response To Defendants' Statement Of Uncontested Facts (DE 46).  As noted below, Defendants argue that they are immune from suit based on the doctrine of qualified immunity.  In analyzing Plaintiffs' claims against this defense, the Court must take the facts "as alleged and supported by affidavits and deposition testimony" in the light most favorable to Plaintiffs.  Bruce v. Beary, 498 F.3d 1232, 1236 n.2 (11th Cir. 2007).

of December 16, 2004, with the assistance of numerous other officers, Jenkins pulled the BMW over on a southbound entrance ramp of Interstate 95.  Officers approached the BMW with their weapons trained on Plaintiffs and ordered them to hold their hands out the windows.  Garruto was directed to reach down and open the driver's side door from the outside.  He tried to communicate to the officers that the door was locked and that he could only open it from the outside if it was first unlocked.  Betancourt also tried to inform the officers that she could not unlock her door for the same reason.  The scene was tense, and suffice it to say that communication between the Parties was not crystal clear.  The officers perceived a delay in Plaintiffs' compliance.  One officer then ordered Betancourt to reach inside the car and slowly unlock the door.  Once the locks popped, officers threw the car doors open and forcibly removed Plaintiffs from the BMW.  They were each immediately handcuffed.

Garruto was handcuffed and placed flat on the ground, face down.  Defendant Young then patted him down on his outer clothing from head to toe.  He retrieved Garruto's wallet from his pants pocket, identified him, and replaced it back in Garruto's pocket.  Defendant Dyer arrived and patted down Betancourt on her outer clothing, including the area of her crotch.  The patdowns, including searching Garruto's wallet and Betancourt's crotch, were done as a matter of course and not based on particularized facts justifying fear of officer safety.

While both Plaintiffs were still handcuffed, Defendants

recovered the registration to the BMW. It was in Betancourt's name and showed the lawful registration of the BMW as tag number LWW144. Having confirmed that neither the BMW nor the tag attached to it were stolen, Plaintiffs were no longer under suspicion of any criminal activity and were uncuffed by 12:44 a.m.

Jenkins conferred with Dispatch, which told him that entry in the teletype system was made by the Sunrise Police Department. He then contacted the City of Sunrise to request that they fix the teletype entry for the stolen Ford. At about 12:50 a.m., Sunrise Dispatch confirmed with Jenkins that they would fix the teletype entry and that it would take about five minutes to do so. Believing they were not free to leave, Plaintiffs remained detained until 2:00 a.m. Finally, at that time, Garruto became somewhat belligerent and told Jenkins that Plaintiffs were leaving. Jenkins allowed them to leave without further incident.

Plaintiffs then initiated this action pursuant to 42 U.S.C. § 1983, arguing that the patdown searches were unconstitutional either by reason of their occurrence or, alternatively, by their scope. In addition, both claim that their detention was unconstitutional insofar as it lasted beyond the reasonable suspicion giving rise to it. Defendants argue both that they violated no constitutional right and, in the alternative, they are entitled to qualified immunity for any violation.

## II. Standard of Review

Defendants argue that they are entitled to qualified immunity for all the claims raised in the Second Amended Complaint.

4

Qualified immunity is designed "to protect government officials performing discretionary functions from civil liability when their actions violate no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 953 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986), and it allows government officials to carry out their duties without the fear of personal liability or harassing litigation.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).  It is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  "The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Forsyth, 472 U.S. at 526) (emphasis omitted).

The question of whether a defendant is entitled to qualified immunity is a question of law applied to settled facts.  It turns on whether the law at the time of the incident in question was clearly established so that a reasonable person would have known that the actions of the defendant violate the law.  See Courson v. McMillian, 939 F.2d 1479, 1487-88 (11th Cir. 1991).  In determining whether state actors are entitled to qualified immunity, the Court must first resolve all issues of material fact in favor of

5

Plaintiffs and then answer the legal question of whether Defendants are entitled to qualified immunity under that version of the facts. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).  In this case, such resolution of factual disputes will clarify whether any constitutional violations have taken place, even though the two-step inquiry previously required by Saucier is no longer mandatory. Pearson v. Callahan, 555 U.S. ___, 2009 WL 128768 (2009).

### III. Analysis

Counts I and II of the Second Amended Complaint (DE 29) allege violations of the Fourth Amendment by Defendant Jenkins in that he is responsible for the stop of Plaintiffs, which they claim was unreasonable in duration and scope.  Count III alleges a violation of the Fourth Amendment by Defendant Young for his patdown search of Plaintiff Garruto.  Finally, Count IV alleges a violation of the Fourth Amendment by Defendant Dyer for her patdown search of Plaintiff Betancourt.

### A.

The Fourth Amendment prohibits the unreasonable search or seizure of an individual by a government official.  U.S. Const. amend. IV.  Though exceptions are legion in the federal system, as a general rule seizures of individuals may be made only upon probable cause and police may search only pursuant to a valid warrant.  In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court articulated one such exception when it held that a law enforcement officer may, without a warrant and on less than probable cause, make an investigatory stop of an individual if the officer

reasonably suspects the individual is committing or is about to commit a crime and frisk his outer clothing if he believes he is in imminent danger. See United States v. Hunter, 291 F.2d 1302, 1305-06 (11th Cir. 2002). Courts look to the totality of the circumstances in determining whether reasonable suspicion exists and seek to determine "whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." Id. at 1306 (quotation omitted). The totality of the circumstances must establish "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. Terry, 392 U.S. at 21.

The arguments in favor of finding Terry stops constitutionally permissible are well known and need not be repeated here, with one exception: a Terry stop and frisk is a tool wielded by police for use in investigating criminal activity. See, e.g., Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 185 (2004). Terry and its progeny have "recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." Id. (citations omitted). A Terry stop does not contemplate the detention of individuals whom the police believe are innocent of any crime. Police may have community caretaking reasons to do that, but no power proceeds from Terry to do so. See United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990) ("[P]olice may stop persons and detain them briefly in order to investigate a reasonable

7

suspicion <u>that such persons are involved in criminal activity</u>.") (emphasis added). The entire body of law following <u>Terry</u> is directed at law enforcement investigations of suspicious individuals and potential criminal activity. <u>Cf.</u> Sameer Bajaj, Note, <u>Policing the Fourth Amendment: The Constitutionality of Warrantless Investigatory Stops for Past Misdemeansors</u>, 109 Colum. L. Rev. 309 (2009).

A <u>Terry</u> stop is made for investigative purposes. And with that power, <u>Terry</u> also recognized the authority of law enforcement officers to perform a brief search of the detained individuals in certain circumstances, known as a "patdown" or "frisk." The Eleventh Circuit has recognized that the different purposes served by a <u>Terry</u> stop and a <u>Terry</u> frisk require different justifications. A stop is justified by a law enforcement officer's reasonable suspicion that a crime occurred, is occurring, or is about to occur. <u>United States v. Harris</u>, 526 F.2d 1334, 1337-38 (11th Cir. 2008). A frisk, however, is justified only by the law enforcement officer's reasonable belief that the detained individual is presently armed and that weapons must be removed for officer safety. <u>United States v. Bonds</u>, 829 F.2d 1072, 1074 (11th Cir. 1987); <u>see also</u> <u>Ybarra v. Illinois</u>, 444 U.S. 85, 93 (1979) (holding that the frisk at issue "was simply not supported by a reasonable belief that [the individual] was armed and presently dangerous, a belief which this Court has invariably held must form the predicate to a patdown of a person for weapons"). "In sum, a stop serves to investigate crime, while a frisk serves to prevent injury." <u>Bonds</u>,

829 F.2d at 1074. The justification giving rise to a proper frisk is the presence of "an objectively reasonable fear based upon specific facts regarding specific individuals. A generalized suspicion or 'hunch' will not justify a frisk." Id. at 1074-05. A frisking officer must be "aware of specific facts which would warrant a reasonable person to believe that he was in danger." United States v. Tharpe, 536 F.2d 1098, 1101 (5th Cir. 1976).[3]

A frisk, designed to quell the officer's fear of injury, must also be limited in its scope. Terry justifies an officer who reasonably believes an individual is armed to make a limited search for weapons alone. Hunter, 291 F.2d at 1307. Its original articulation, that the frisk is a limited patdown of the outer clothing of an individual for weapons, remains the law today. See Terry, 392 U.S. at 29-30; Hunter, 291 F.3d at 1307 (approving a patdown after observing a bulge under the defendant's shirt).

As with the propriety of frisks, much litigation has surrounded the proper parameters of a Terry stop. A Terry stop cannot last longer than necessary to effectuate the purposes for the stop. Florida v. Royer, 460 U.S. 491, 500 (1983). In other words, "[t]o ensure that the resulting seizure is constitutionally reasonable, a Terry stop must be limited. The officer's action must be justified at its inception, and reasonably related in scope

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

to the circumstances which justified the interference in the first place." Hiibel, 542 U.S. at 186 (quotations omitted). Thus, a Terry stop is an exception to the probable cause and warrant requirements of the Fourth Amendment and its justification ends when reasonable suspicion of criminal activity and the need to investigate that further are removed. See United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir. 1999) (holding that justification for a traffic stop made under Terry ends when police finish briefly questioning person about his license, registration, and insurance). Once a law enforcement officer's reasonable suspicion is eliminated by the non-incriminating result of his investigation, he may no longer intrude on the privacy of the members of his community. Id.; see also Tapia, 912 F.2d at 1370 ("[T]he [F]ourth [A]mendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop.").[4]

B.

Plaintiffs first argue that Defendants Young and Dyer patted them down without reasonably believing that they were armed and dangerous. DE 44, p. 14, citing Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977). They do not challenge the propriety of the stop of the BMW, DE 44, p. 2 n.1, but they do argue that Defendants lacked the justification necessary to pat them down. As stated

---

[4] In this case, no Party argues that the seizure of Plaintiffs constituted an arrest. Each side agrees that the stop and frisk should be analyzed according to Terry. See DE 30, ¶¶ 54, 63; DE 34, pp. 2-3, 10-11; DE 44, pp. 8-18; DE 57, pp. 1-2. This will be addressed infra at Part V.

above, a patdown is permissible only when the officer believes based on specific, objective facts that he is in danger of imminent harm.  Bonds, 829 F.2d at 1074.

Defendants fail to articulate any specific and objective fact to justify their patdowns of Plaintiffs.  The instant Motion (DE 34) is devoid of any argument whatsoever that any particular fact or set of facts justified Defendants' fear and thus justified the frisks.  Their sole justification is this fleeting statement: "Deputies then approached the vehicle and physically removed both Plaintiffs, who were handcuffed and patted down for officer safety."  DE 34, p. 3.  The rest of the Motion describes the facts as they occurred and lists legal rule after legal rule.  There is no justification for the patdowns other than "they happened" and "the law allows them to happen in certain circumstances."  There is not a single analogy drawn between the specific facts justifying frisks in previous cases and those justifying them here.  The Reply (DE 57) is no different.  There, Defendants only argue that danger is often posed to officers making traffic stops.  DE 57, pp. 3-4.  This is probably true--officers in Defendants' position are admittedly in a dangerous position--but Defendants' categorical assertion falls woefully short of the articulation of specific, objective facts required by Terry.  See Terry, 392 U.S. at 21; Tapia, 912 F.2d at 1370; Bonds, 829 F.2d at 1074; Hunter, 291 F.2d at 1306.[5]

---

[5] Defendants cite Minnesota v. Dickerson to the Court to justify the patdowns.  They render this quote in the section of

11

Next, both Plaintiffs argue that the scope of a reasonable patdown search was exceeded. A frisk is permissible under Terry when it is a limited patdown on the outer clothing of an individual for weapons. Hunter, 291 F.2d at 1307. As stated above, every frisk must be justified by specific, objective facts. Bonds, 829 F.2d at 1074-05; Tapia, 912 F.2d at 1370. Even contorting the facts to find an articulated, objective basis for the patdown searches based on some general spectre of violence, the constitutionally permissible scope was exceeded here. In his deposition, Young could not testify to any belief in danger of imminent harm when he frisked Garruto. Deposition of Charles Young, DE 47-9, pp. 7-8, 11-12. What he did testify to is that he found Garruto's wallet in his pocket and that Terry authorizes him always to search pockets containing wallets. Id. pp. 10-11. Despite the absence of any articulated reasonable belief that the wallet was a weapon, Young reached into Garruto's pocket and removed it. Dyer also could not testify to any specific fact justifying a belief that Betancourt needed to be patted down for officer safety. See generally Deposition of Barbara Dyer, DE 47-

---

their brief regarding the patdowns: "[T]he purpose of a patdown is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." 508 U.S. 366, 373 (1993) (cited in DE 34, p. 13). While not disagreeing with this rule of law, the Court cannot find its applicability to this case. Defendants never argue that they were in fear of violence when Young and Dyer patted down Plaintiffs. In fact, it took "minutes" for Dyer even to arrive to frisk Betancourt. DE 34, p. 7. If these officers were afraid of something on the night in question, they forgot to include that in their briefing.

10. Despite the absence of any articulated reasonable belief that a weapon was present in the area of Betancourt's crotch, Dyer's frisk included that area. No reasonable fear for officer safety justified the scope of these patdowns insofar as Garruto's pocket-wallet frisk and Betancourt's crotch frisk were concerned. Because only these two issues are raised with respect to the scope of the patdowns, DE 29, ¶¶ 74 & 81, Defendants' Motion must be denied on this point.

Finally, Plaintiffs argue that the length of the detention exceeded the limitations of a <u>Terry</u> stop. After Jenkins confirmed that Betancourt was the owner of the BMW and its tag was displayed properly, he continued to detain Plaintiffs, though without handcuffs. The Court finds based on the facts, as taken in the light most favorable to Plaintiffs, that they reasonably believed they were not free to leave at any time before they actually did. To justify a <u>Terry</u> stop, "the relevant inquiry in evaluating the presence of reasonable suspicion is 'not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts.'" <u>Tapia</u>, 912 F.2d at 1370-71 (quoting <u>United States v. Sokolow</u>, 490 U.S. 1, 10 (1989)) (further quotation omitted). In this case, however, <u>no</u> degree of suspicion attached to <u>any</u> activity of Plaintiffs after Jenkins confirmed that the BMW was the property of Betancourt and displayed the proper tag. Thus, no justification can sustain their continued detention after 12:44 a.m., when this information was confirmed.

13

Jenkins, understandably not trying to justify Plaintiffs' continued detention on investigatory grounds, argues that he was acting to ensure Plaintiffs' safety by having the teletype entry fixed. Plaintiffs were pulled over to investigate a possible stolen vehicle or stolen license plate. After clearing up that matter, they were detained longer for Jenkins to assure that citizens in his community could go without fear of having weapons drawn on them again. But "[o]nce such brief questioning was completed, [the detainees] should have been free to go, as [the officer] was provided at that time with no reasonable suspicion of their criminal activity." Pruitt, 174 F.3d at 1221. His brief argues that "Jenkins' actions were clearly taken with the singular purpose of assisting and protecting Plaintiffs." DE 57, p. 4. Thus, without any investigative purpose behind Plaintiffs' continued detention, it cannot be justified under Terry.[6]

Therefore, the Court finds that based on these facts and the argument of Counsel, Defendants violated Plaintiffs' rights to be free from unreasonable search and seizure. This is an example of "a search," and seizure, "which is reasonable at its inception

---

[6] This Order should not be taken as any assault upon the good faith of Jenkins in acting as he did. The facts as recited herein do not establish Jenkins as an officer who acted with the purpose to violate Plaintiffs' constitutional rights. Indeed, the recordings of the conversations Jenkins had with his own Dispatcher and the Sunrise Police Department, DE 55, clearly show that Jenkins was concerned about the possibility that Plaintiffs may be pulled over again if the license plate discrepancy was not cleared up. However, his actions were defended with recourse to Terry, and the Court must adjudge them accordingly.

[but] violate[s] the Fourth Amendment by virtue of its intolerable intensity and scope." <u>Terry</u>, 392 U.S. at 18 (citations omitted).

C.

As a defense to any possible constitutional violation, Defendants argue that they are entitled to qualified immunity. Government officials sued in their individual capacities are entitled to immunity from suit if they can establish that a reasonable law enforcement officer in their position, possessing the same knowledge and beliefs, could have believed reasonable suspicion justified the actions taken. <u>Young v. Eslinger</u>, 244 Fed. Appx. 278, 279 (2007). Such a belief is reasonable if the constitutional right a plaintiff sues over is not clearly established at the time of the events. <u>Crenshaw v. Lister</u>, 556 F.3d 1283, 1289 (11th Cir. Feb. 6, 2009) (quotation omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

The rights of Plaintiffs violated by Defendants were clearly established at the time of these facts. There is no novelty in the rule that a patdown search is only permissible if the officer believes based on specific, objective facts that he is in danger. <u>Ybarra</u>, 444 U.S. at 92-93. In the same vein, the officer defending his frisk must be able to articulate those facts clearly. <u>Id.</u> Further, a <u>Terry</u> frisk is only to be made for weapons or other instruments of violence. <u>Bonds</u>, 829 F.2d at 1074. Here, no

15

specific, objective facts justifying a belief of imminent danger were ever articulated.  Young testified that he had no recollection of the facts at the time he searched Garruto's pocket and removed his wallet.  Deposition of Charles Young, DE 47-9, pp. 7-8, 11-12.  Likewise, Dyer could not testify to any belief that she was in danger from a weapon concealed in Betancourt's crotch but searched there anyway.  Deposition of Barbara Dyer, DE 47-10.

Finally, a <u>Terry</u> stop must be made for investigative purposes only, and its duration must be limited to the time needed for such investigation of possible criminal activity.  <u>Royer</u>, 460 U.S. at 500.  Jenkins argues that there are no cases clearly establishing that the purpose of Plaintiffs' detention was satisfied prior to confirming via teletype that the incorrect tag number was corrected. DE 57, pp. 6-7.  He mischaracterizes this case.  It is only willful blindness that would prevent a police officer from knowing that the investigatory purposes of the stop ended guillotine-like with the confirmation that Betancourt owned the BMW and that the tag displayed thereon was correct.  Once this information was known, any reasonable suspicion for the stop was eliminated and Plaintiffs' handcuffs were removed.  No further purposes for investigating possible criminal activity have been argued by Defendants and none appear in the record.  Jenkins's bureaucratic gymnastics in having the teletype entry fixed was not a matter of investigating Plaintiffs of criminal activity.  That much was clearly established.  Clearing Plaintiffs of any wrongdoing related to the stolen license plate or stolen vehicle by

12:44 a.m. truncated the scope of any permissible Terry stop. These principles were established and, thus, Jenkins is not entitled to qualified immunity for the scope of this stop under Terry.

## IV. Conclusion

The Court finds, for purposes of Defendants' instant Motion (DE 34) and applying the proper standard of review, that Defendants violated Plaintiffs' constitutional right to be free from unreasonable searches and seizures. Moreover, Defendants' claims of qualified immunity fail because the rights violated were clearly established at the time these actions took place. Therefore, Defendants are not entitled to judgment as a matter of law upon the grounds argued in their Motion.

Defendants argue that § 1983 does not envision civil actions for trivial constitutional intrusions. Their briefing describes the seizure and patdown searches of Plaintiffs as "too slight to activate constitutional concerns." DE 57, p. 11. The case this un-attributed language comes from is United States v. Broomfield, 417 F.3d 654, 656 (7th Cir. 2005). There, the Seventh Circuit determined that the command by a police officer "show me your hands" to a person walking down the street was not a Terry stop. Finding that the whole exchange "lasted only seconds," the court found that no seizure at all occurred. Id. at 657. This is worlds apart from the instant action, where Plaintiffs were approached at gunpoint, forcibly removed from their vehicle, handcuffed, and then patted down.

Defendants' argument that any invasion was too minimal to concern this Court evidences that they fail to appreciate the great importance placed on personal liberty by our common law tradition. The Court in Terry, while noting police officers' wide authority to investigate crimes, gave homage to our civil liberties and dismissed the notion that any such intrusion, even a lawful one, is de minimis.  Said of the original Terry stop-and-frisk, "it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless . . . is a 'petty indignity.'  It is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly."  Terry, 368 U.S. at 16-17 (footnotes omitted).[7]  Thus, though the lifting of Garruto's wallet and the touching of Bentancourt's crotch be quick and painless, those actions warrant the Court's attention because they violate Terry here.

## V. Postscript

The Court is at a complete loss why Defendants have not attempted to justify their actions based on an arrest of Plaintiffs.  Indeed, they go to great length to distance their actions from an arrest.  DE 34, pp. 10-11.  The original traffic stop was made because Jenkins believed Plaintiffs were driving a

---

[7] The Terry Court noted the vulnerability of a person while he is "perhaps facing a wall with his hands raised."  392 U.S. at 17. How much more true this is for Garruto, who was frisked while he was handcuffed laying face down in the street.

18

vehicle with a stolen license plate.  This is a misdemeanor under Florida law, Fla. Stat. § 320.261, and thus an arrestable offense under federal law.  <u>Virginia v. Moore</u>, 553 U.S. ___, 128 S. Ct. 1598, 1602-07 (2008).[8]  Had the traffic stop and handcuffing of Plaintiffs been justified as an arrest, the search of Plaintiffs and the length of their detention perhaps could be upheld.  If these actions could not be justified as constitutional, they may arguably have qualified Defendants for immunity from suit.  This argument was not raised in the instant Motion, though, and the Court must rule on the Motion before it.  However, as this is a § 1983 action for violations of the Fourth Amendment, Plaintiffs carry the burden of proof.  <u>Rankin v. Evans</u>, 133 F.3d 1425, 1436 (11th Cir. 1998).  Because summary judgment is aimed at avoiding unnecessary trials and, to the extent still possible here, promoting the expeditious disposition of cases, the Court invites further briefing.

Defendants shall address in a second Motion for summary judgment whether Jenkins had probable cause to arrest Plaintiffs on the night in question and, if so, whether Defendants' subsequent actions upon custodial arrest violate the Fourth Amendment. Plaintiffs may counter these arguments with further briefing of their own.  This further briefing by both sides shall consist of

---

[8] Regardless of Jenkins's specific belief, his seizure of Plaintiffs could also be supported by probable cause to believe they had committed theft of the license plate.  Fla. St. § 812.014(1) (making it a crime to obtain or use the property of another).

19

legal arguments only and shall address the record as it has been submitted for determination of Defendants' instant Motion (DE 34).

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion For Summary Judgment (DE 34) be and the same is hereby **DENIED**;

2. Within ten (10) days of the date of this Order, Defendants shall file a Second Motion For Summary Judgment with the Clerk of this Court addressing the issue of whether their actions in this case constitute constitutionally permissible arrests and searches under the Fourth Amendment; and

3. The Parties may file Response and Reply memoranda consistent with and within the time set by Local Rule 7.1.C.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this   7th    day of May, 2009.

							_____
							WILLIAM J. ZLOCH
							United States District Judge

Copies furnished:

All Counsel of Record